IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY L. KINNEY, JR., | : | Civil No. 3:20-CV-0953 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| D. FELSMAN, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION

I.    Statement and Facts of the Case

This is a civil rights case filed by the *pro se* plaintiff, Randy L. Kinney, Jr., who was incarcerated in the Wyoming County Correctional Facility in 2020 following an incident with officers of the Pennsylvania State Police Tunkhannock and Gibson Barracks. Kinney is currently incarcerated at SCI Camp Hill. His claims arise out of the alleged used of excessive force during his arrest in January 2020.

Kinney's complaint alleges that, during his arrest on January 31, 2020, Lieutenant Felsman hit him repeatedly with a "blackjack" causing him to need staples in his head. (Doc. 1, at 4). He further alleges that he was beaten over his whole body, (Id.), causing cuts to his face and head and bruising to his legs, arms,

and ribs. (Id., at 5). He seeks compensatory damages for pain and suffering, mental anguish, and medical expenses from the defendant. (Id., at 5).[1]

The precise nature of Kinney's allegations as they relate to the sole defendant named in this lawsuit, Defendant Felsman, have varied over time, but at least some of Kenney's allegations have stated a colorable Constitutional claim against this defendant. Furthermore, the factual record before us seems to place Felsman at the arrest scene in operational command of the troopers who took Finney into custody. Thus, a state police affidavit identified Felsman as the operational leader of the effort to extract Kinney from a home and arrest him. (Doc. 1, at 12). Kinney's complaint then alleged that Felsman, "the state police sergeant hit me repeatedly with a blackjack." (Id., at 4). Thus, the complaint alleged direct participation by the sergeant in this alleged use of excessive force.

Kinney was deposed regarding these allegations. (Doc. 33-1). This brief deposition serves as the foundation for the defense summary judgment motion and casts Kenney's claims in a somewhat murky light. At the outset, during this deposition Kinney testified as follows:

Q      So tell me why you filed this lawsuit.

---

[1] Kinney also vaguely asserts in his complaint that he was not read his rights when he was arrested in violation of Miranda v. Arizona, 384 U.S. 436 (1966). However, Kinney does not assert any remedy based on the alleged Fifth Amendment violation. Thus, we will not address this claim in our memorandum.

A      Because when they came and arrested me they beat the crap out of me. I had to get staples in my head and everything.

Q      When you say "they," who are you referring to?

A      Well, in the affidavit I got there was a team put together by Felsman, Sergeant Felsman, or whatever his name is, and him and, like, five or six other troopers came in. And the hostage negotiator tried talking me into coming out peacefully. I did it. I didn't fight back, nothing. They came in, they drug me out of where I was at. They beat me from the top of my head to my toes. My head got split open. I got cuts ·all over my face,

(Id., at 3).

Kinney then described Defendant Felsman's role in a slightly different

fashion, testifying as follows:

Q      And what did -- well, he was then Sergeant Felsman, he's now Lieutenant Felsman. What did Lieutenant Felsman specifically do to you?

A.      Well, he's the one that initiated everything for them to come in and get me.

Q      Okay. And at any time did he use force on you?

A      Yes. It says right in my affidavit that he gave me that day, he sent to me, that he, I'm pretty sure it was him, that he used his department issued stun device or whatever. It's in the affidavit I have from my arrest.

(Id., at 4).

Kinney repeated in this deposition that his complaint was "based on what was

in that affidavit" before closing his testimony by stating:

3

> Listen, there was six troopers in there. And I was covered in blood. I
> couldn't see. So I don't --I was getting beat up from the top of my head
> to my toes. I don't know who was all beating on me. But there was six,
> five or six troopers in there. And one of them split my head open.

(Id.)

Kinney filed this action in the United States District Court for the Middle

District of Pennsylvania on June 12, 2020, alleging a violation of his civil rights

pursuant to 42 U.S.C. § 1983. (Doc. 1). Citing Kinney's factual confusion regarding

the precise nature of his claims, Lt. Felsman filed the instant motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56, arguing that Kinney has

failed to allege facts that support a claim for liability against him. (Doc. 31).

However, Felsman advances this argument in a factual void, where we are presented

with no evidence indicating what role Defendant Felsman played in these events,

beyond his conceded on-scene operational leadership role at the time of Kinney's

arrest. The motion has been fully briefed and is ripe for resolution. (Docs. 32, 33,

34). Recognizing at this stage that we must construe the evidence in a light most

favorable to the plaintiff when considering a summary judgment motion, for the

reasons that follow, we will deny the defendant's motion for summary judgment.

## II.   **Discussion**

### A. **Motion for Summary Judgment – Standard of Review**

The defendant has moved for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure, which provides that the court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails

5

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. <u>Id.</u>, at 252; <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. of Newark New Jersey v. DuFresne</u>, 676

6

F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697

F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue

of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is

also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).

Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338,

341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or

assess credibility when passing upon a motion for summary judgment. Rather, in

adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable

inferences in the light most favorable to the non-moving party. Big Apple BMW,

Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where

the non-moving party's evidence contradicts the movant's, then the non-movant's

must be taken as true. Id. Additionally, the court is not to decide whether the

evidence unquestionably favors one side or the other, or to make credibility

determinations, but instead must decide whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see

also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third

Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## B. __The Defendant's Motion Should Be Denied.__

Construing Kinney's *pro se* complaint liberally, as we are required to do, the complaint purports to bring a constitutional claim against the defendant for the use of excessive force. On this score, Kinney alleges that Lt. Felsman physically assaulted and severely injured him during a police encounter. Kinney's complaint and deposition testimony can also be read as alleging that Felsman acquiesced in the excessive use of force and failed to intervene to prevent this excessive use of force. Thus, liberally construed, Kinney's complaint alleges that Lt. Felsman used, or permitted the use of excessive force against him in violation of his Fourth Amendment rights.

The defendant's motion argues that Kinney has not shown that Lt. Felsman was personally involved in the alleged physical encounter during his arrest in January of 2020. Thus, Felsman contends that there is no issue of material fact, and that summary judgment should be granted in his favor on this § 1983 claim. We disagree.

It is well-settled that "a defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence but cannot be solely predicated on the operation of *respondeat superior*. Rode, 845 F.2d at 1207–08. A complaint may adequately allege a defendant's personal direction, or actual knowledge and acquiescence by "alleg[ing] the particulars of 'conduct, time, place, and persons responsible,'" and must allege more than a "mere hypothesis" that the defendant had knowledge or involvement in the incident. Muhammad v. Martin, No. 3:19-CV-1316, 2021 WL 832645, at *5 (M.D. Pa. Mar. 4, 2021) (quoting Evancho v. Fisher, 423 F.3d at 354; Rode, 845 F.2d at 1207-08)).

On this score, our inquiry turns on whether there is a genuine issue of material fact regarding Lt. Felsman's personal involvement in the alleged violation of Kinney's Fourth Amendment rights. In our view, on this murky factual record, there

exists a question for the jury as to whether Lt. Felsman was personally involved in the alleged use of excessive force either through his personal direction, knowledge and acquiescence, or by his failure to intervene.

The Supreme Court of the United States has held that claims against law enforcement officers that allege the use of excessive force in the context of an arrest, investigatory stop, or other "seizure" are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). Indeed, "[t]he use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006). In assessing such a claim for a Fourth Amendment violation under § 1983, the inquiry is whether the force used by the law enforcement officers was objectively reasonable in light of the totality of the circumstances. Graham, 490 U.S. at 397.

Here, the defendant does not contest the reasonableness of the force used, but rather asserts he is entitled to summary judgment because Kinney cannot prove Lt. Felsman's personal involvement in the alleged violation. (Doc. 32, at 4). Felsman argues that given the factual confusion in the description of Kinney's claims, his claim is based solely on the theory of *respondeat superior* and fails as a matter of law (Id.)

While it is well established that liability under § 1983 cannot be imposed upon a state official based solely on a theory of *respondeat superior*, we disagree that this

10

is the sole basis of Kinney's claim. The concept of *respondeat superior* imputes liability for an employee's actions to a superior. This concept has been rejected in § 1983 cases involving the liability of supervisors for pervasive policies or patterns of misconduct throughout a department or institution. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Offs., 546 F.2d 1077 (3d Cir. 1976); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). For example, in Rizzo, the court found no causal link between the behavior alleged—an unacceptably high number of incidents of police misconduct throughout the department—and the superiors named in the action. Rizzo, 423 U.S. at 373. In Hampton, a prison warden could not be held responsible for the failure of the guards to provide medical care. Hampton, 546 F.2d at 1082 ("Even if liability had been established against the guards, there is not the slightest evidence showing that the warden had actual knowledge of the unanswered request for medical attention or that he acquiesced or participated in any denial."). Here, although Felsman unquestionably held a supervisory role at the scene of the arrest, there still exists a question as to his precise involvement in the alleged violation.

As we have noted, personal involvement resulting in liability can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207–08. The inquiry we are faced with, then, is whether when we construe the evidence in a light most favorable to Kinney the defendant has

11

identified evidence showing an absence of a genuine issue of material fact as to whether Felsman personally directed or had actual knowledge and acquiesced to the alleged incident. We find that the defendant has failed to identify facts that would support an entry of summary judgment in his favor on this claim.

First, although the record supporting Kinney's claim is unclear about what exact role Felsman played during the arrest, the Affidavit of Probable Cause states that Lt. Felsman was on the scene managing the arrest. (Doc. 1, at 12). Further, while the affidavit does not specifically name any members of the entry team, the defendant has not proffered any evidence that Lt. Felsman was not part of the entry team that extracted Kinney at the time of the alleged use of excessive force. Although Kinney was unable to clearly identify Lt. Felsman's role in these events at his deposition, (Doc. 33-1, at 3), he has at various times alleged that Felsman directly participated in this episode, acquiesced in the conduct of the troopers, or failed to intervene. Moreover, the information in the Affidavit of Probable Cause to which Kinney refers tends to create a question as to whether Felsman was part of the entry team that extracted Kinney. (Doc. 1, at 12). On this score, the affidavit indicates that Lt. Felsman was leading the team on the scene at the time of the incident. (Id.) Further, while the affidavit indicates the entry team consisted of multiple members of PSP, Gibson and PSP, Tunkhannock, it does not specify whether Lt. Felsman was part of the team. (Id.) In fact, the defendants have not provided any evidence

disputing the plaintiff's contention that Felsman was part of the team that allegedly used excessive force.

Finally, although Kinney conceded the difficulty in identifying his alleged assailants because all the troopers were wearing tactical gear, (Doc. 34, at 1), his *pro se* complaint and deposition testimony does "alleg[e] the particulars of 'conduct, time, place, and persons responsible,'" Muhammad, 2021 WL 832645, at *5, albeit in a somewhat confused fashion. Thus, the complaint alleges that on January 31, 2020, "the state police sergeant hit me repeatedly with a blackjack causing me to need staples," and specifically names Lt. Felsman as the alleged assailant. (Doc. 1, at 4). The question is not whether Kinney could physically identify Lt. Felsman after the encounter but whether all the evidence presented, viewed in the light most favorable to the non-moving party, creates a question of fact for the jury. We find that it does. Here, the defendant has not provided evidence from which we could conclude that no genuine issues of material fact exist.

Closely related to the excessive force claim is a failure to intervene claim which exposes police officers who failed to intervene in this physical altercation which entailed excessive force to civil culpability for this failure to intervene. Thus, "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence,

the officer is directly liable under Section 1983." <u>Smith v. Mensinger</u>, 293 F.3d 641,

650 (3d Cir. 2002) (quoting <u>Byrd v. Clark</u>, 783 F.2d 1003, 1007 (11th Cir. 1986)).

Courts recognize failure to intervene claims, albeit in a narrow set of

circumstances. In order to sustain a failure to intervene claim, the plaintiffs must

ultimately plead and prove three elements: "(1) the officer had a duty to intervene;

(2) the officer had the opportunity to intervene; and (3) the officer failed to

intervene." <u>Ledcke v. Pennsylvania Dep't of Corr.</u>, 2014 WL 12638878, at *6 (M.D.

Pa. July 31, 2014), <u>report and recommendation adopted,</u> 2014 WL 12639241 (M.D.

Pa. Aug. 25, 2014) (citing <u>Smith</u>, 293 F.3d 641, 650-51). Alleging that officers

"communicated and worked collectively during the use of force" can sufficiently

demonstrate "a failure to intervene against each officer to the extent they observed

the other using excessive force." <u>Shuey v. Schwab</u>, 2010 WL 479938, at *5 (M.D.

Pa. Feb. 4, 2010).

Here again, we are faced with an outstanding question as to Lt. Felsman's

role. Even if Kinney has fallen short of proving Lt. Felsman physically caused his

injuries, the defendant has not resolved the issue of whether Lt. Felsman was part of

the team that extracted Kinney and acquiesced in the excessive use of force or failed

to intervene. It is undisputed that Felsman was present and was on the scene at the

time of the alleged incident. Thus, a question remains as to whether Felsman had a

duty and opportunity to intervene in the actions of other officers in the extraction

14

team and failed to do so. If Lt. Felsman communicated and worked collectively with the extraction team during the alleged use of force, a reasonable jury may find that he had a duty and opportunity to intervene, even if he did not personally cause the plaintiff's injuries.

In sum, we recognize the allegations set forth by Kinney against Lt. Felsman are neither detailed nor entirely clear. Nonetheless, to prevail on his motion for summary judgment, the burden is on Felsman to present evidence eliminating the question as to his personal involvement in the extraction of Kinney, whether he had knowledge of the actions taken therein, and whether he had the duty and opportunity to intervene. He has presented no such evidence and Kinney has alleged, albeit in a halting manner, that Felsman either directly participated in these events, or acquiesced in them and failed to intervene. Thus, viewing the facts in the light most favorable to the non-movant, and drawing all reasonable inferences in favor of the non-movant, there is a question of fact as to whether Lt. Felsman had the degree of personal involvement in the alleged constitutional violation necessary to state a claim. For this reason, it would be inappropriate to grant summary judgment at this time.

## III.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, the defendant's motion for summary judgment (Doc. 31) will be DENIED.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 5, 2021